1
2
3
4
5

UNITED STATES DISTRICT COURT

6

EASTERN DISTRICT OF CALIFORNIA

7
8

ADP COMMERCIAL LEASING, INC., et al.,

CASE NO. CV F 13-0587 LJO SKO

9
10

Plaintiff,

**ORDER ON MOTIONS TO DISMISS AND STRIKE**
(Docs. 13, 15.)

11
12

vs.

13
14

M.G. SANTOS, INC., et al.,

15
16

Defendants.

_____/

17

AND RELATED COUNTER ACTION

18

_____/

19

## PRELIMINARY STATEMENT TO THE PARTIES AND COUNSEL

20

Judges in the Eastern District of California carry the heaviest caseload in the nation,

21

and this Court is unable to devote inordinate time and resources to individual cases and

22

matters. This Court cannot address all arguments, evidence and matters raised by parties and

23

addresses only the arguments, evidence and matters necessary to reach the decision in this

24

order given the shortage of district judges and staff. The parties and counsel are encouraged to

25

contact United States Senators Diane Feinstein and Barbara Boxer to address this Court's

26

inability to accommodate the parties and this action. The parties are required to consider, and

27

if necessary, to reconsider consent to one of the Court's U.S. Magistrate Judges to conduct all

28

further proceedings in that the Magistrate Judges' availability is far more realistic and

1

accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill who must prioritize criminal and older civil cases. A Magistrate Judge consent form is available on this Court's website.

Civil trials set before Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Judge O'Neill is unavailable on the original date set for trial. If a trial trails, it may proceed with little advance notice, and the parties and counsel may be expected to proceed to trial with less than 24 hours notice. Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from outside the Eastern District of California. Case management difficulties, including trial setting and interruption, are avoided if the parties consent to conduct of further proceedings by a U.S. Magistrate Judge.

**INTRODUCTION**

Plaintiffs-counter defendants[1] seek to dismiss and strike as inadequately pled defendants-counterclaimants M.G. Santos, Inc. ("MG Santos") and Westside Sales Co., Inc.'s ("Westside's") fraud based counterclaims and affirmative defenses. MG Santos and Westside (collectively the "dealers") respond that their fraud based counterclaims and affirmative defenses are adequately pled. This Court considered the ADP parties' F.R.Civ.P. 12(b) motion to dismiss and F.R.Civ.12(f) motion to strike on the record and VACATES the July 31, 2013 hearing, pursuant to Local Rule 230(g). For the reasons discussed below, this Court DISMISSES MG the dealers' fraud based counterclaims and strikes their fraud based affirmative defenses.

/ / /

/ / /

/ / /

_____

[1]     Plaintiff-counter defendants are ADP Commercial Leasing, LLC ("ADP Commercial"), ADP Dealer Services, Inc. ("ADP Dealer"), and IP Networked Services, Inc. ("IP Services") and will be referred to collectively as the "ADP parties."

# BACKGROUND[2]

## Summary

Westside operates its Westside Ford automobile dealership in Firebaugh, California, and MG Santos operates its recreational vehicle ("RV") dealership Toscano RV Center in Los Banos, California.  The ADP parties pursue claims that the dealers breached agreements by which the ADP parties provided computer hardware, software and maintenance and voice over internet protocol telephone services.  The dealers pursue counterclaims that the ADP parties defrauded them to enter into the agreements and allege affirmative defenses of fraudulent inducement and unclean hands based on such fraud.  The ADP parties challenge the dealers' fraud based counterclaims and affirmative defenses as lacking sufficient specificity to satisfy F.R.Civ.P. 9(b).

## The ADP Parties' Claims

The ADP parties' complaint is summarized as follows:

### *ADP Commercial's Leases With The Dealers*

ADP Commercial leases computer equipment to vehicle dealers and entered into two equipment leases ("Santos leases") with MG Santos, which signed them on February 2, 2012.  MG Santos failed to make payments under the Santos leases.

ADP Commercial entered into a computer equipment lease ("Westside lease") with Westside, which signed it on February 2, 2012.  Westside failed to make payments under the Westside lease.

### *ADP Dealer's Agreement With MG Santos*

ADP Dealer provides software licenses and maintenance and entered into a Master Services Agreement ("ADP Dealer agreement") with MG Santos, which signed the ADP Dealer agreement on December 27, 2011.  MG Santos failed to make payments under the ADP

---

[2]      The   factual recitation generally summarizes the ADP parties' Complaint for Damages ("complaint") and the dealers' answer to the complaint ("answer") and counterclaim ("counterclaim").

3

Dealer agreement.

### *IP Services' Agreements With The Dealers*

IP Services provides telephone services and entered into Master Services Agreements ("IP Services agreements") with each of the dealers, which signed the IP Service agreements on December 27, 2011.   The dealers failed to make payments under the IP Services agreements.

The complaint alleges that the dealers breached the Santos and Westside leases, ADP Dealer agreement, and IP Services agreements and further alleges quasi-contract claims against Westside.

### **The Dealers' Claims**

### *Fraudulent Inducement*

The dealers' counterclaim alleges a (first) fraudulent inducement claim, which is summarized as follows:

The ADP parties' longtime sales and account representative Bill Fox ("Mr. Fox") had represented the ADP parties in 2007 to negotiate a five-year agreement with the dealers for the WebSuite 1000 dealer management system.   In anticipation of expiration of the WebSuite 1000 agreement, Mr. Fox in 2011 began to meet with the dealers to discuss upgrading to the ADP Drive dealer management system ("ADP Drive DMS").   At 2011 meetings at the dealers' Firebaugh and Los Banos dealerships, Mr. Fox:

1.      Misrepresented that the ADP Drive DMS "was the right ADP product for both Westside's auto dealership, and for M.G. Santos' RV dealership";

2.      Misrepresented that the ADP Drive DMS "was developed and intended for . . . use by two affiliated businesses using the single ADP Drive product, where one business was an auto dealership and the other an RV dealership" like the dealers;

3.      Concealed that the ADP Drive DMS "was developed and intended for use by auto and truck dealerships," not RV dealerships, and was not the right dealer management system for MG Santos, "whose RV dealership generated revenues and profits much greater than Westside's auto dealership";

4

4.      Knew the representations were false and made them to induce the dealers to upgrade their "far cheaper" WebSuite 1000 and to sign agreements and leases "for a 5-year commitment to the ADP Drive DMS"; and

5.      Concealed that the ADP parties had "ADP Lightspeed," which "was specifically developed and intended for RV dealerships," such as MG Santos, and that ADP Lightspeed was "the proper upgrade option" for MG Santos' RV dealership.

The dealers reasonably relied on the longtime, seasoned sales representative Mr. Fox who had gained the dealers' trust and belief in his superior knowledge and experience.  The dealers signed the leases and agreements for the ADP Drive DMS, "not realizing that it was the wrong Dealer Management System for their situation, resulting in severe disruption, damage, and loss to their businesses."

### *Fraud*

The counterclaim alleges a (second) fraud claim which is summarized as follows:

After inducing the dealers to contract for the ADP Drive DMS for five years, the ADP parties misrepresented that the dealers needed access to the WebSuite 1000 system, for which the dealers continued to make monthly payments, and needed to transfer all relevant data as to inventories, parts, service, customer information, warranties, financing, etc. to the ADP Drive DMS.  Rather than transfer all relevant data as represented, the ADP parties incompletely transferred data to the ADP Drive DMS and locked out the dealers from WebSuite 1000 although the contract for it had not expired and monthly payments continued.  The ADP parties forced the dealers to rely solely on the ADP Drive DMS which was unsuited of the dealers and without the fall back of the WebSuite 1000 to cause "severe disruption, damage, and loss to their businesses."

### Fraud Based Affirmative Defenses

The answer's (fourth) fraudulent inducement affirmative defense seeks to bar the ADP parties' claims because the dealers were fraudulently induced to sign the Santos and Westside leases, ADP Dealer agreement, and IP Services agreements.  The fraudulent inducement affirmative defense includes the factual allegations of the of the counterclaim's fraudulent

1  inducement claim.

2      The answer's (sixth) unclean hands affirmative defense seeks to bar the ADP parties'

3  claims "by the doctrine of unclean hands" in that the ADP parties' fraudulently induced the

4  dealers to sign the Santos and Westside leases, ADP Dealer agreement, and IP Services

5  agreements, ratified such fraudulent inducement in bad faith, and proceed against the dealers

6  "based on that fraud."

7                              **DISCUSSION**

8                  **F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards**

9      The ADP parties seek to dismiss the counterclaim's fraudulent inducement and fraud

10  claims for failure to satisfy F.R.Civ.P. 9(b) particularity requirements.

11      A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable

12  legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."

13  *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of*

14  *Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).  A F.R.Civ.P. 12(b)(6) motion "tests the legal

15  sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

16      In addressing dismissal, a court must:  (1) construe the complaint or counterclaim in the

17  light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and

18  (3) determine whether the complaining party can prove any set of facts to support a claim that

19  would merit relief.  *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).

20  Nonetheless, a court is not required "to accept as true allegations that are merely conclusory,

21  unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities*

22  *Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court "need not assume the

23  truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v.*

24  *Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must  not "assume that the [plaintiff] can

25  prove facts that it has not alleged or that the defendants have violated . . . laws in ways that

26  have not been alleged." *Associated General Contractors of California, Inc. v. California State*

27  *Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an

28  attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid*

*Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A counterclaimant is obliged "to provide the 'grounds' of his 'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, a complaint or counterclaim "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009), the U.S. Supreme Court explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it

has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-1950.

With these standards in mind, this Court turns to the ADP parties' challenges to the counterclaim's fraudulent inducement and fraud claims.

## **Pleading Fraud Based Claims**

### *Elements*

Fraud elements for deceit are "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Engalla v. Permanente Medical Group, Inc.*, 15 Cal.4th 951, 974, 64 Cal.Rptr.2d 843 (1997).

"[T]o establish a cause of action for fraud a plaintiff must plead and prove in full, factually and specifically, all of the elements of the cause of action." *Conrad v. Bank of America*, 45 Cal.App.4th 133, 156, 53 Cal.Rptr.2d 336 (1996).  There must be a showing "that the defendant thereby intended to induce the plaintiff to act to his detriment in reliance upon the false representation" and "that the plaintiff actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment." *Conrad*, 45 Cal.App.4th at 157, 53 Cal.Rptr.2d 336.

### *Particularity Pleading Standard*

The ADP parties argue that the counterclaim lacks particularized facts to support fraud based claims.

F.R.Civ.P. 9(b) requires a party to "state with particularity the circumstances

/ / /

/ / /

8

constituting fraud."[3]   In the Ninth Circuit, "claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements." *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1141 (C.D. Cal. 2003).  A court may dismiss a claim grounded in fraud when its allegations fail to satisfy F.R.Civ.P. 9(b)'s heightened pleading requirements.  *Vess*, 317 F.3d at 1107.[4]  A motion to dismiss a claim "grounded in fraud" under F.R.Civ.P. 9(b) for failure to plead with particularity is the "functional equivalent" of a F.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim.  *Vess*, 317 F.3d at 1107. As a counter-balance, F.R.Civ.P. 8(a)(2) requires from a pleading "a short and plain statement of the claim showing that the pleader is entitled to relief."

F.R.Civ.P. 9(b)'s heightened pleading standard "is not an invitation to disregard Rule 8's requirement of simplicity, directness, and clarity" and "has among its purposes the avoidance of unnecessary discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996).  F.R.Civ.P 9(b) requires "specific" allegations of fraud "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).   "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671-672 (9th Cir. 1993) (internal quotations omitted; citing *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 866 (9th Cir. 1997)).  The Ninth Circuit has explained:

---

[3]     F.R.Civ.P. 9(b)'s particularity requirement applies to state law causes of action: "[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1995)(italics in original))

[4]     "In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim.  In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess*, 317 F.3d at 1103-1104.

Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud. The time, place and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud. The statement in question must be false to be fraudulent. Accordingly, our cases have consistently required that circumstances indicating falseness be set forth. . . . [W]e [have] observed that plaintiff must include statements regarding the time, place, and *nature* of the alleged fraudulent activities, and that "mere conclusory allegations of fraud are insufficient." . . . The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. . . .

In certain cases, to be sure, the requisite particularity might be supplied with great simplicity.

*In Re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-1548 (9th Cir. 1994) (en banc) (italics in original) *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F.Supp. 1297 (C.D. Cal. 1996); *see Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (fraud allegations must be accompanied by "the who, what, when, where, and how" of the misconduct charged); *see Neubronner*, 6 F.3d at 672 ("The complaint must specify facts as the times, dates, places, benefits received and other details of the alleged fraudulent activity."); *Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (1986) ("the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation").

In a fraud action against a corporation, a plaintiff must "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co.,* 2 Cal.App.4th 153, 157, 2 Cal.Rptr.2d 861 (1991).

F.R.Civ.P. 9(b) "does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764-765 (9th Cir. 2007) (quoting *Haskin v. R.J. Reynolds Tobacco Co*., 995 F.Supp. 1437, 1439 (M.D. Fla.1998)). In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum,

"identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir.1989).  "To state a claim of fraudulent conduct, which carries substantial reputational costs, plaintiffs must provide each and every defendant with enough information to enable them 'to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with.'" *Pegasus Holdings v. Veterinary Centers of America, Inc.*, 38 F.Supp.2d 1158, 1163 (C.D. Cal. 1998) (quoting *In re Worlds of Wonder Sec. Litig.*, 694 F.Supp. 1427, 1433 (N.D. Cal.1988)).

### *The Fraudulent Inducement Claim*

The ADP parties attack the fraudulent inducement claim in that the counterclaim:

1.     Fails to identify "which individuals were present at each meeting" when misrepresentations were made and "which representatives of the dealers relied on the misrepresentations";

2.     Fails to identify the date on which each misrepresentation was made;

3.     Fails to identify an actionable misrepresentation in that representations that the ADP Drive DMS is the "right product" and was developed for affiliated auto and RV dealerships are sales puffery or "non-actionable opinion about a future event"; and

4.     Lumps impermissibly the ADP parties as a single "ADP" entity without specifying "what conduct is attributable to each ADP entity."

The dealers offer no meaningful opposition to the ADP parties particular criticisms. The dealers merely respond that their counterclaims "contain multiple, specific factual allegations depicting ADP's fraudulent course of conduct" and "identify the specific circumstances constituting fraud in the inducement to contract with ADP, and fraud subsequent to those contracts."  The dealers continue that "based on the context and circumstances of the longstanding contractual relationships of the parties," the dealers' counterclaims "are plausible."

To support fraud, an "alleged misrepresentation must ordinarily be an affirmation of past or existing facts," whereas "predictions as to future events are deemed opinions, and not actionable by fraud."  *Glen Holly Entertainment, Inc. v. Tektronix, Inc.,* 100 F.Supp.2d 1086,

1093 (C.D. Cal. 1999); *see Gentry v. eBay, Inc.*, 99 Cal.App.4th 816, 835, 121 Cal.Rptr.2d 703 ("expressions of opinion are not generally treated as representations of fact, and thus are not grounds for a misrepresentation cause of action").  "The alleged misrepresentation must also ordinarily be a specific factual assertion; generalized statements are usually not actionable as fraud. . . . However, statements about specific or absolute characteristics of a product are considered specific statements and may be actionable statements of fraud."  *Glen Holly Entertainment,* 100 F.Supp.2d at 1093.

"In contrast, assertions that a particular product is the 'best' or speculative statements about possible profits are non-actionable opinions ('puffing') and a party is not entitled to rely upon them." *Glen Holly Entertainment,* 100 F.Supp.2d at 1093.  "Puffery" has been described as "making generalized or exaggerated statements such that a reasonable consumer would not interpret the statement as a factual claim upon which he or she could rely." *In re All Terrain Vehicle Litigation*, 771 F.Supp. 1057, 1060 (C.D. Cal. 1991).

This Court disagrees with the ADP parties that the counterclaim lacks a sufficiently pled misrepresentation.   The counterclaim alleges affirmative representations as to characteristics of the ADP Drive DMS to the effect that ADP Drive DMS suited the dealers' needs.  However, this Court agrees with the ADP parties that the counterclaim lacks sufficient facts to identify the dealers' representatives who relied on the alleged misrepresentations and the dates of the alleged misrepresentations.  Moreover, the counterclaim impermissibly lumps the ADP parties as a single entity.  If the dealers rely on Mr. Fox's representations, his role with any or all of the ADP parties must be better defined.  As such, the fraudulent inducement claim is subject to dismissal with leave to amend.

### *Fraudulent Concealment*

The ADP parties characterize allegations that the ADP parties concealed ADP Lightspeed as fraudulent concealment lacking sufficient particularity.  Because "nondisclosure is a claim for misrepresentation in a cause of action for fraud, it (as any other fraud claim) must be pleaded with particularity under Rule 9(b)."  *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1127 (9th Cir. 2009).

A claim for fraudulent concealment requires that:

1.     The "defendant must have concealed or suppressed a material fact;"

2.     The "defendant must have been under a duty to disclose the fact to the plaintiff;"

3.     The "defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff;"

4.     The "plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact;" and

5.     As a result of the concealment or suppression of the fact, "the plaintiff must have sustained damage."

*Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1163 (9th Cir. 2012) (quoting *Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal.App.4th 603, 7 Cal.Rptr.2d 859, 864 (1992)).

The ADP parties fault the counterclaim's absence of allegations to identify:

1.     The ADP parties' duty to disclose that "a different entity" offered a dealer management service product;

2.     Persons who were deceived;

3.     Facts that the dealers did not know of Lightspeed and would have acted differently had they known of Lightspeed; and

4.     Facts that the dealers were damaged based on non-disclosure of Lightspeed.

The record is unclear whether the dealers pursue a fraudulent concealment claim. The dealers offer nothing to support such claim. The ADP parties raise valid points as to the absence of facts to support a fraudulent concealment claim. To the extent the counterclaim attempts to allege a fraudulent concealment claim, such claim is dismissed with leave to amend.

### *The Fraud Claim*

The ADP parties fault the failure of the counterclaim's (second) fraud claim to allege facts to identify alleged misrepresentations, the person who made the alleged misrepresentations, the recipient of the alleged misrepresentations, when, where and how the

alleged misrepresentations were made, and how the alleged misrepresentations were relied upon.  The ADP parties further fault the counterclaim's lumping the ADP parties as a single ADP entity and failing to distinguish their alleged wrongs to support the fraud claim.  The ADP parties continue that a fraud claim cannot rest on the WebSuite 1000 agreement which had expired and no longer rendered the ADP parties under contract.

The counterclaim fails to satisfy F.R.Civ.P. 9(b) particularity requirements to support the fraud claim.  The  counterclaim fails to identify who misrepresented that the dealers needed access to the WebSuite 1000 system and who received and relied on the alleged misrepresentations.   The counterclaim fails to identify specifics regarding the alleged misrepresentations, including when, where and how they were made and relied upon.  The counterclaim fails to distinguish alleged wrongdoing among the ADP parties and merely attributes wrongdoing to the ADP parties as a combined entity.  The fraud claim is subject to dismissal with leave to amend.

### Striking Affirmative Defenses

The ADP parties seek to strike the answer's (fourth) fraudulent inducement and (sixth) unclean hands affirmative defenses for failure to satisfy F.R.Civ.P. 9(b) particularity requirements and rely on the same grounds they advocate to dismiss the counterclaim's fraudulent inducement and fraud claims.

The dealers offer no meaningful support for their fraudulent inducement and unclean hands affirmative defenses and chiefly incorporate their limited arguments to support their counterclaim.

F.R.Civ.P. 12(f) empowers a district court to "strike from a pleading an insufficient defense."  A motion to strike is properly granted if it will make trial less complicated or else eliminate delay, serious risks of prejudice to the moving party, or confusion of the issues.  *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993), *rev'd on other grounds* by 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994).

F.R.Civ.P. 8(b)(1)(A) requires a party responding to a pleading to "state in short and plain terms its defenses to each claim asserted against it."  An affirmative defense may be

stricken as insufficient either as a matter of law or as a matter of pleading. *Kohler v. Islands Restaurants, LP*, 280 F.R.D. 560, 564 (S.D. Cal. 2012). Legal insufficiency means that the affirmative defense lacks merit "under any set of facts the defendant might allege." *McArdle v. AT & T Mobility LLC*, 657 F.Supp.2d 1140, 1150 (N.D.Cal.2009), *rev'd on other grounds by* 474 Fed. Appx. 515 (2012). Pleading insufficiency means a failure to provide the plaintiff with fair notice. *Kohler*, 280 F.R.D. at 565.

In pleading an affirmative defense, a party must give "fair notice of what the [affirmative defense] is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99 (1957)). To meet this requirement, each affirmative defense must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009). This court "must accept as true all of the factual allegations contained in the [answer]." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (citations omitted). Neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 664.

In all averments of fraud, including affirmative defenses, the circumstances constituting the fraud must be stated with particularity. *Multimedia Patent Trust v. Microsoft Corp.,* 525 F.Supp.2d 1200, 1210-1211 (S.D. Cal. 2007).

"If the court determines that an affirmative defense is insufficiently pled, it may strike the defense and require the defendant to file an amended pleading that includes more specific allegations. Leave to amend will be freely granted so long as no prejudice results to the moving party." *Dodson v. Munirs Co.,* 2013 WL 3146818, at 8 (E.D. Cal. 2013).

### *Fraudulent Inducement*

The ADP parties argue that since the answer's (fourth) fraudulent inducement affirmative defense mirrors the counterclaim's (first) fraudulent inducement claim, the affirmative defense should be stricken for the same reasons as the claim is dismissed, that is, the affirmative defense lacks sufficient particularity to satisfy F.R.Civ.P. 9(b).

Consistent with evaluation of the fraudulent inducement claim, the fraudulent

inducement affirmative defense lacks sufficient facts to identify the dealers' representatives who relied on the alleged misrepresentations and the dates of the alleged misrepresentations. Moreover, the affirmative defense impermissibly lumps the ADP parties as a single entity.  If the dealers rely on Mr. Fox's representations, his role with any or all of the ADP parties must be better defined.  As such, the fraudulent inducement affirmative defense is stricken with leave to amend.

### *Unclean Hands*

The answer's (sixth) unclean hands affirmative defense seeks to bar the ADP parties' claims in that the ADP parties fraudulently induced the dealers to sign the Santos and Westside leases, ADP Dealer agreement, and IP Services agreements, in bad faith ratified that fraudulent inducement, and proceed against the dealers "based on that fraud."

To challenge the unclean hands affirmative defense, the ADP parties raise their same points to support dismissal of the counterclaim's fraudulent inducement and fraud claims since the unclean hands affirmative defense is premised on the ADP parties' alleged fraud.

The unclean hands affirmative defense appears based on the same or similar facts to support the fraudulent inducement claim and thus fails for similar reasons.  Nonetheless, the dealers are granted leave to amend the unclean hands affirmative defense in conjunction with the fraud based claims and affirmative defense.

### <u>CONCLUSION AND ANSWER</u>

For the reasons discussed above, this Court:

1.      DISMISSES with leave to amend the counterclaim's fraudulent inducement and fraud claims;

2.      STRIKES the answer's fraudulent inducement and unclean hands affirmative defenses but GRANTS the dealers leave to amend the fraudulent inducement and unclean hands affirmative defenses;

3.      ORDERS the dealers, no later than August 15, 2013, to file and serve either papers to dismiss their counteraction or an amended counterclaim.  If the dealers file an amended counterclaim, they are admonished to pursue only claims based on sufficient

1  supporting facts and law and that this Court will grant the dealers no further attempt to plead
2  counterclaims; and

3      4.    ORDERS the ADP parties, no later than September 4, 2013, to file and serve a
4  response to the dealers' amended counterclaim, if filed.

7  IT IS SO ORDERED.

8  Dated:  **July 24, 2013**          **/s/ Lawrence J. O'Neill**
9                                    UNITED STATES DISTRICT JUDGE