UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ADP COMMERCIAL LEASING, INC., et al.,

Plaintiffs,

vs.

M.G. SANTOS, INC., et al.,

Defendants.

___________________________________/

AND RELATED COUNTER ACTION.

___________________________________/

CASE NO. CV F 13-0587 LJO SKO

**ORDER ON MOTIONS TO DISMISS AND STRIKE**
(Docs. 31, 34.)

**PRELIMINARY STATEMENT TO THE PARTIES AND COUNSEL**

Judges in the Eastern District of California carry the heaviest caseload in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. This Court cannot address all arguments, evidence and matters raised by parties and addresses only the arguments, evidence and matters necessary to reach the decision in this order given the shortage of district judges and staff. The parties and counsel are encouraged to contact United States Senators Diane Feinstein and Barbara Boxer to address this Court's inability to accommodate the parties and this action. The parties are required to consider, and

if necessary, to reconsider consent to one of the Court's U.S. Magistrate Judges to conduct all further proceedings in that the Magistrate Judges' availability is far more realistic and accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill who must prioritize criminal and older civil cases. A Magistrate Judge consent form is available on this Court's website.

Civil trials set before Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Judge O'Neill is unavailable on the original date set for trial. If a trial trails, it may proceed with little advance notice, and the parties and counsel may be expected to proceed to trial with less than 24 hours notice. Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from outside the Eastern District of California. Case management difficulties, including trial setting and interruption, are avoided if the parties consent to conduct of further proceedings by a U.S. Magistrate Judge.

**INTRODUCTION**

Plaintiffs-counter defendants[1] seek to dismiss and strike as inadequately pled defendants-counterclaimants M.G. Santos, Inc. ("MG Santos") and Westside Sales Co., Inc.'s ("Westside's") fraud based counterclaims and unclean hands affirmative defense. MG Santos and Westside (collectively the "dealers") respond that their fraud based counterclaims and unclean hands affirmative defense are adequately pled. This Court considered the ADP parties' F.R.Civ.P. 12(b) motion to dismiss and F.R.Civ.12(f) motion to strike on the record and VACATES the October 3, 2013 hearing, pursuant to Local Rule 230(g). For the reasons discussed below, this Court GRANTS in part the ADP parties' requested relief.

/ / /

/ / /

[1] Plaintiff-counter defendants are ADP Commercial Leasing, LLC ("ADP Commercial"), ADP Dealer Services, Inc. ("ADP Dealer"), and IP Networked Services, Inc. ("IP Services") and will be referred to collectively as the "ADP parties."

## BACKGROUND[2]

### Summary

Westside operates its Westside Ford auto/truck dealership in Firebaugh, California, and MG Santos operates its recreational vehicle ("RV") dealership Toscano RV Center in Los Banos, California. The ADP parties pursue claims that the dealers breached agreements by which the ADP parties provided a data management system of integrated computer hardware, software and internet telephone services along with maintenance. The dealers pursue counterclaims that the ADP parties defrauded them to enter into the agreements and concealed a more appropriate data management system and allege, among others, an affirmative defense of unclean hands based on such fraud. The ADP parties challenge the dealers' fraud based counterclaims and the unclean hands affirmative defense as lacking sufficient specificity to satisfy F.R.Civ.P. 9(b).

### The ADP Parties' Claims

The ADP parties' complaint is summarized as follows:

#### *ADP Dealer's Agreement With MG Santos*

ADP Dealer provides software licenses and maintenance and entered into a Master Services Agreement ("ADP Dealer agreement") with MG Santos, which signed the ADP Dealer agreement on December 27, 2011. MG Santos failed to make payments under the ADP Dealer agreement.

#### *ADP Commercial's Leases With The Dealers*

ADP Commercial leases computer equipment to vehicle dealers and entered into two equipment leases ("Santos leases") with MG Santos, which signed them on February 2, 2012. MG Santos failed to make payments under the Santos leases.

ADP Commercial entered into a computer equipment lease ("Westside lease") with Westside, which signed it on February 2, 2012. Westside failed to make payments under the

[2] The factual recitation generally summarizes the ADP parties' Complaint for Damages ("complaint") and the dealers' first amended answer to the complaint ("amended answer") and first amended counterclaim ("amended counterclaim").

Westside lease.

***IP Services' Agreements With The Dealers***

IP Services provides telephone services and entered into Master Services Agreements ("IP Services agreements") with each of the dealers, which signed the IP Service agreements on December 27, 2011. The dealers failed to make payments under the IP Services agreements.

The complaint alleges that the dealers breached the Santos and Westside leases, ADP Dealer agreement, and IP Services agreements and further alleges quasi-contract claims against Westside.

**The Dealers' Claims**

***Fraudulent Inducement***

The dealers' amended counterclaim alleges a (first) fraud in the inducement claim against ADP Commercial and ADP Dealer and which is summarized as follows:

The Original Data Management System

In 2006, the dealers' vice president Michael Santos ("Mr. Santos") sought a data management system for Westside. At that time, MG Santos operated without a data management or other computer system. Mr. Santos' colleagues referred Mr. Santos to William Fox ("Mr. Fox"), ADP Commercial and ADP Dealer's representative for the Los Banos and Firebaugh area.

Mr. Fox represented to Mr. Santos that Mr. Fox had worked as an ADP Commercial/ADP Dealer salesman/account representative for more than 15 years and had sold integrated computer systems to dealers that included ADP Commercial computer hardware and ADP Dealer computer software. Mr. Fox and Mr. Santos negotiated a five-year agreement for a data management system known as WebSuite 1000.

During the next four years, Mr. Santos grew to trust Mr. Fox "to rely solely on his apparent expertise regarding data management system needs" for Mr. Santos' family businesses because Mr. Santos "was extremely limited in his knowledge of computers and computer systems." During the WebSuite 1000's term, Mr. Fox visited Mr. Santos in person at the

Westside dealership without an appointment and checked in by telephone two or three times annually. The in person visits were 30-90 minutes.

Switch To ADP Drive System

In 2011 as the WebSuite 1000 contract neared its end, Mr. Santos decided not to "shop around" for another data management system given the trust he reasonably had developed with Mr. Fox during the course of the WebSuite 1000 contract. In spring 2011, Mr. Santos contacted Mr. Fox to discuss the possibility of both of the dealers' auto/truck and RV dealerships to switch to the ADP Drive data management system ("ADP Drive"), which a related Santos dealership used.

In July 2011, Mr. Fox and a technical assistant "made personal sales/production presentations" at the dealers' Los Banos and Firebaugh dealerships for two to three hours each to describe the "virtues and benefits" of the ADP Drive. During his sales presentations, answers to staff questions, and "private conversations with Mr. Santos," Mr. Fox misrepresented that ADP Drive "was designed for, engineered for, intended for, appropriate for, and fully compatible and congruent with the system and business needs and requirements" of "two affiliated businesses," such as an RV dealership, like MG Santos, and an auto/truck dealership, like Westside.

In truth, ADP Drive was not designed for, engineered for or intended for "the unique and specific system, business and technical needs and requirements of an RV Dealership" or for two affiliated businesses such as an auto/truck dealership and RV dealership.

Mr. Santos justifiably relied on Mr. Fox's misrepresentations because Mr. Santos trusted Mr. Fox and "had only the most basic and rudimentary knowledge of computer systems." The dealers "were, to their extreme detriment, fraudulently induced to contract with ADP for the ADP Drive DMS system."

***Fraudulent Concealment***

The amended counterclaim alleges a (second) fraudulent concealment claim against ADP Dealer and which is summarized as follows:

/ / /

ADP Lightspeed

Since 2004, ADP Lightspeed has been part of ADP Dealer and provides "integrated computing solutions specifically designed, engineered and intended to meet the unique needs of RV dealerships." At the time Mr. Fox made misrepresentations to induce the dealers to contract for ADP Drive, Mr. Fox concealed ADP Lightspeed which was suitable for MG Santos' RV dealership.

Mr. Fox had a duty to disclose ADP Lightspeed to the dealers "because of the longstanding business relationship, and reasonable trust and reliance placed on that relationship by [the dealers], who [sic] Fox knew relied solely on them to inform and advise them with respect to dealer management system needs and requirements." Mr. Fox intentionally concealed ADP Lightspeed's existence with intent to defraud the dealers who "were completely unaware of the existence of ADP Lightspeed" and "would not have entered the agreements that are the subject of Plaintiffs [sic] complaint."

***Damages***

Based on ADP Commercial and ADP Dealer's fraud, the dealers "sustained severe disruption, damage and loss to the RV dealership business of M.G. Santos, with every aspect of their operations, including sales, service and maintenance, F & I, parts inventory, customer information, customer relations, and accounting, all sustaining severe disruption, damage and loss."

**The Dealers' Unclean Hands Affirmative Defense**

The amended answer's (fifth) unclean hands affirmative defense seeks to bar the ADP parties' claims "by the doctrine of unclean hands" on the basis of the of ADP parties' "fraudulent concealment" and "fraudulent conduct" alleged in the amended counterclaim "in fraudulently inducing [the dealers] to sign the agreements and leases which are subject of [the ADP parties'] claims in this action, and then, in bad faith, ratifying that fraudulent inducement, and proceeding against [the dealers] in this action based on that fraud."

/ / /

/ / /

**DISCUSSION**

**F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards**

The ADP parties seek to dismiss the amended counterclaim's fraudulent inducement and fraudulent concealment claims for failure to satisfy F.R.Civ.P. 9(b) particularity requirements.

A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995). A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In addressing dismissal, a court must: (1) construe the complaint or counterclaim in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether the complaining party can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983). A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A counterclaimant is obliged "to provide the 'grounds' of his 'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that,

even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, a complaint or counterclaim "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009), the U.S. Supreme Court explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity

and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-1950.

With these standards in mind, this Court turns to the ADP parties' challenges to the amended counterclaim's fraudulent inducement and fraudulent concealment claims.

**Pleading Fraud Based Claims**

***Elements***

Fraud elements for deceit are "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Engalla v. Permanente Medical Group, Inc.*, 15 Cal.4th 951, 974, 64 Cal.Rptr.2d 843 (1997).

"[T]o establish a cause of action for fraud a plaintiff must plead and prove in full, factually and specifically, all of the elements of the cause of action." *Conrad v. Bank of America*, 45 Cal.App.4th 133, 156, 53 Cal.Rptr.2d 336 (1996). There must be a showing "that the defendant thereby intended to induce the plaintiff to act to his detriment in reliance upon the false representation" and "that the plaintiff actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment." *Conrad*, 45 Cal.App.4th at 157, 53 Cal.Rptr.2d 336.

***Particularity Pleading Standard***

The ADP parties argue that the amended counterclaim lacks particularized facts to support fraud based claims.

F.R.Civ.P. 9(b) requires a party to "state with particularity the circumstances constituting fraud."[3] In the Ninth Circuit, "claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements." *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1141 (C.D. Cal. 2003). A court may dismiss a claim grounded in fraud

[3] F.R.Civ.P. 9(b)'s particularity requirement applies to state law causes of action: "[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1995)(italics in original))

when its allegations fail to satisfy F.R.Civ.P. 9(b)'s heightened pleading requirements. *Vess*, 317 F.3d at 1107.[4] A motion to dismiss a claim "grounded in fraud" under F.R.Civ.P. 9(b) for failure to plead with particularity is the "functional equivalent" of a F.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim. *Vess*, 317 F.3d at 1107. As a counter-balance, F.R.Civ.P. 8(a)(2) requires from a pleading "a short and plain statement of the claim showing that the pleader is entitled to relief."

F.R.Civ.P. 9(b)'s heightened pleading standard "is not an invitation to disregard Rule 8's requirement of simplicity, directness, and clarity" and "has among its purposes the avoidance of unnecessary discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996). F.R.Civ.P 9(b) requires "specific" allegations of fraud "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671-672 (9th Cir. 1993) (internal quotations omitted; citing *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 866 (9th Cir. 1997)). The Ninth Circuit has explained:

> Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud. The time, place and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud. The statement in question must be false to be fraudulent. Accordingly, our cases have consistently required that circumstances indicating falseness be set forth. . . . [W]e [have] observed that plaintiff must include statements regarding the time, place, and *nature* of the alleged fraudulent activities, and that "mere conclusory allegations of fraud are insufficient." . . . The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading.

---

[4] "In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess*, 317 F.3d at 1103-1104.

. . .

> In certain cases, to be sure, the requisite particularity might be supplied with great simplicity.

*In Re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-1548 (9th Cir. 1994) (en banc) (italics in original) *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F.Supp. 1297 (C.D. Cal. 1996); *see Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (fraud allegations must be accompanied by "the who, what, when, where, and how" of the misconduct charged); *see Neubronner*, 6 F.3d at 672 ("The complaint must specify facts as the times, dates, places, benefits received and other details of the alleged fraudulent activity."); *Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (1986) ("the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation").

In a fraud action against a corporation, a plaintiff must "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal.App.4th 153, 157, 2 Cal.Rptr.2d 861 (1991).

F.R.Civ.P. 9(b) "does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764-765 (9th Cir. 2007) (quoting *Haskin v. R.J. Reynolds Tobacco Co*., 995 F.Supp. 1437, 1439 (M.D. Fla.1998)). In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, "identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir.1989). "To state a claim of fraudulent conduct, which carries substantial reputational costs, plaintiffs must provide each and every defendant with enough information to enable them 'to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with.'" *Pegasus Holdings v. Veterinary Centers of America, Inc.*, 38 F.Supp.2d 1158, 1163 (C.D. Cal. 1998) (quoting *In re*

*Worlds of Wonder Sec. Litig.*, 694 F.Supp. 1427, 1433 (N.D. Cal.1988)).

This Court next addresses the ADP parties' criticisms of the amended counterclaim's fraud claims.

**Misrepresentations To Mr. Santos**

The ADP parties challenge the absence of facts of Mr. Fox's misrepresentations made directly to Mr. Santos to support the fraudulent inducement claim. "Fraud in the inducement is a subset of the tort of fraud. It occurs when the promisor knows what he is signing but his consent is induced by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is voidable." *Hinesley v. Oakdale Town Center*, 135 Cal.App.4th 289, 295-296, 37 Cal.Rptr.3d 364 (2005) (internal quotations and citations omitted).

The fraudulent inducement claim alleges that in July 2011, Mr. Fox "made personal sales/product presentations" at the dealers' Los Banos and Firebaugh dealerships. The ADP parties fault the absence of allegations that Mr. Santos attended the presentations since the fraudulent inducement claim identifies only Mr. Santos to have relied on alleged misrepresentations. The ADP parties fault the fraudulent inducement claim's failure to allege facts that Mr. Santos' heard Mr. Fox's responses to staff questions. The ADP parties further challenge the fraudulent inducement claim's failure to identify the date of Mr. Fox's private conversations with Mr. Santos.

Although allegations of facts surrounding Mr. Fox's misrepresentations to Mr. Santos are imprecise, the inferences of the fraudulent inducement claim satisfy pleading concerns. The fraudulent inducement claim no less than suggests that Mr. Fox's alleged misrepresentations were made during spring and summer 2011. Putting aside whether Mr. Santos heard alleged misrepresentations during meetings with staff, the fraudulent conveyance claim points to private conversations during the relevant time frame to support fraud particulars regarding the timing and content of alleged misrepresentations to Mr. Santos.

**Damages**

The ADP parties argue that the amended counterclaim fails to allege Westside's damages in that it references only MG Santos' damages.

Both the fraudulent inducement and fraudulent concealment claim allege specifically that "counter-claimants sustained severe disruption, damage and loss to the RV dealership business of M.G. Santos, with every aspect of **their** operations, including sales, service and maintenance, F & I, parts inventory, customer information, customer relations, and accounting, all sustaining severe disruption, damage and loss." (Bold added.) Although the allegation specifically references MG Santos, the allegation refers to disruption of both dealers' "operations." The ADP parties read the allegation too narrowly.

The ADP parties further fault the absence of "facts to show that the dealer management system failed to operate as represented" in that the amended counterclaim points to the unsuitability of the ADP Drive for MG Santos' RV dealership. The ADP parties criticize the lack of details to establish the date of disruption, damage or loss.

The amended counterclaim's inferences are that the WebSuite 1000 system accommodated MG Santos and that disruption arose on conversion to ADP Drive. Such inferences are bolstered by the ADP parties' claims that the dealers made few, if any, payments required by their ADP Drive agreements to suggest that the dealers stopped payments upon disruption of their operations. Nothing suggests that the dealers failed to make WebSuite 1000 system payments based on disruption of their operations. Since at least one of the ADP parties installed the ADP Drive, such party or parties is/are aware of the conversion and the alleged incapability with MG Santos' operation. The key issue is not whether the ADP Drive operated but rather whether it satisfied MG Santos' needs as Mr. Fox represented it would.

**Inconsistent Allegations**

The ADP parties note that in their amended answer, the dealers, in responding to the ADP parties' complaint, fail "to admit execution of the agreements" which the amended counterclaim "alleges were fraudulently induced." The ADP parties point to amended answer allegations that the dealers lack knowledge or information sufficient to form a belief that the dealers entered into the Santos leases, Westside lease, ADP Dealer agreement and IP Services agreement with the ADP parties and accepted leased equipment. The ADP parties point to inconsistent amended counterclaim allegations that the ADP Drive caused disruption to the

dealers. The ADP parties accuse the dealers of prohibited pleading "in the disjunctive" in that the dealers claim "they were fraudulently induced to enter into agreements, yet they cannot bring themselves to admit that they signed the agreements or to spell out which agreements." The ADP parties conclude that considering the amended counterclaim with the amended answer's failure to admit agreement existence, the amended counterclaim fails to satisfy F.R.Civ.P. 9(b).

The ADP parties ignore that F.R.Civ.P. 8 provides general rules of pleading, including inconsistent claims or defenses. “A party may state as many separate claims or defenses as it has, regardless of consistency.” F.R.Civ.P. 8(d)(3). “Even if the affirmative defense of the compromise agreement was inconsistent with the denials contained in the answer, . . . the denials were good because alterative and inconsistent defenses may be pleaded.” *M. Snower & Co. v. United States*, 140 F.2d 367, 370 (7th Cir. 1944); *see also Suntrust Mortgage, Inc. v. Busby*, 651 F. Supp.2d. 472, 489 (W.D. N.C. 2009) (F.R.Civ.P. 8(d)(3) explicitly allows inconsistent pleading among answer, affirmative defenses and counterclaims.).

The ADP parties point to no authority to prohibit inconsistencies among amended answer and amended counterclaim allegations. In addition, the existence and identity of the agreements allegedly fraudulently induced are not a mystery. The fraudulent inducement claim proceeds against ADP Commercial and ADP Dealer only. The record reveals that agreements between the dealers, ADP Commercial and ADP Dealer are limited to the Santos leases, Westside lease, and ADP Dealer agreement. If ADP Commercial and ADP Dealer entered into other agreements with the dealers, ADP Commercial and ADP Dealer are certainly aware of such agreements.

**Lumping The ADP Parties**

The ADP parties fault the fraudulent inducement claim's lumping together ADP Commercial and ADP Dealer by referencing them collectively as "ADP" to obscure "which agreements were allegedly procured by fraud." Again, there is no mystery as to the agreements at issue. The record reveals that agreements between the dealers, ADP Commercial and ADP Dealer are limited to the Santos leases, Westside lease, and ADP Dealer agreement.

**Reasonable Reliance On Mr. Fox's Alleged Misrepresentations**

The ADP parties assert that the dealers could not reasonably rely on "supposed representations that Bill Fox was ADP Commercial Leasing, LLC's agent and that he was making representations about the equipment suitability." The ADP parties appear to support such notion with citation to *Hinesley*, 135 Cal.App.4th at 295, 37 Cal.Rptr.3d 364, and its purported proposition that "contractual disclaimers will not defeat a fraud claim, but analyzed specific disclaimers to find as a matter of law that reliance was not justifiable."

The ADP parties' points as to Mr. Santos and the dealers' reasonable reliance are unavailing in that as acknowledged by the ADP parties, "justifiable reliance is usually a question of fact." As such, this Court need not address the ADP parties' imprecise points regarding disclaimers in agreements at issue.

Moreover, the ADP parties' points as to Mr. Fox's agency status are unavailing. The ADP parties know of Mr. Fox's arrangement or status with them despite the amended counterclaim's mere identification of Mr. Fox as an agent and/or employee of ADP Commercial and ADP Dealer. The dealers bear the burden to establish Mr. Fox's agency relationship to bind the ADP parties.

In sum, the ADP parties fail to demonstrate that they are entitled to dismissal of the fraudulent inducement claim.

**Fraudulent Concealment**

The ADP parties challenge the amended counterclaim's (second) fraudulent concealment claim to the effect that Mr. Fox failed to advise "Mr. Santos about ADP Lightspeed, a division that provides dealer management systems to RV dealers."

Because "nondisclosure is a claim for misrepresentation in a cause of action for fraud, it (as any other fraud claim) must be pleaded with particularity under Rule 9(b)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009).

A claim for fraudulent concealment requires that:

1. The "defendant must have concealed or suppressed a material fact;"

2. The "defendant must have been under a duty to disclose the fact to the

plaintiff;"

3. The "defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff;"

4. The "plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact;" and

5. As a result of the concealment or suppression of the fact, "the plaintiff must have sustained damage."

*Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1163 (9th Cir. 2012) (quoting *Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal.App.4th 603, 7 Cal.Rptr.2d 859, 864 (1992)).

"A claim of fraud based on mere nondisclosure may arise when there is a confidential relationship, when the defendant has made a representation that is likely to mislead absent a disclosure, when there is active concealment of the undisclosed matter, or when one party to a transaction has sole knowledge or access to material facts and knows that such facts are not known to or reasonably discoverable by the other party. *Alfaro v. Community Housing Imp. System & Planning Ass'n, Inc.*, 171 Cal.App.4th 1356, 1382, 124 Cal.Rptr.3d 271 (2009) (internal quotation and citation omitted).

The ADP parties fault the absence of a special relationship between Mr. Fox and the dealers to support a duty to disclose allegedly concealed or suppressed facts. The ADP parties argue that the amended counterclaim reflects Mr. Fox as a non-confidential salesman or computer consultant who visited a few times a year. *See Ferris & Salter, P.C. v. Thomson Reuters Corp.*, 889 F.Supp.2d 1149, 1153 (D. Minn. 2012) (failing to hold computer consultant to a higher professional standard); *Hospital Computer Systems, Inc. v. Staten Island Hosp.*, 788 F.Supp. 1351, 1361 (D. N.J. 1992) (same). The ADP parties further fault the fraudulent concealment claim in that the dealers could have learned of ADP Lightspeed on their own, including through online research. In addition, the ADP parties criticize the absence of allegations that "ADP Lightspeed was the right computer solution" for MG Santos.

The dealers offer little to attempt to support the fraudulent concealment claim. To support Mr. Fox's duty to disclose ADP Lightspeed, the dealers note the amended

counterclaim's allegations of their "longstanding business relationship, and reasonable trust and reliance placed on that relationship" and Mr. Fox's knowledge that the dealers relied on him as to "dealer management system needs and requirements."

The amended counterclaim's facts and inferences point to a sales/consulting, not confidential relationship with Mr. Fox. The dealers provide no support that their purported unbridled faith in Mr. Fox creates a duty under the limited facts alleged in the amended counterclaim. There are no allegations that the dealers asked about other data management systems or their availability and that Mr. Fox denied their existence. The amended counterclaim's facts and inferences are that Mr. Fox recommended ADP Drive and that the dealers accepted it. Such facts and inferences fail to substantiate the fraudulent concealment claim which is subject to dismissal.

**Striking Unclean Hands Affirmative Defense**

The ADP parties seek to strike the amended answer's (fifth) unclean hands affirmative defense as insufficiently pled to satisfy F.R.Civ.P. 9(b).

***F.R.Civ.P. 12(f) Motion To Strike Standards***

F.R.Civ.P. 8(c)(1) addresses affirmative defenses and requires a party responding to a pleading to "affirmatively state any avoidance or affirmative defense." F.R.Civ.P. 12(f) empowers a district court to "strike from a pleading an insufficient defense." "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993) (quotation marks, citation, and first alteration omitted), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). A motion to strike is properly granted if it will make trial less complicated or else eliminate delay, serious risks of prejudice to the moving party, or confusion of the issues. *Fantasy, Inc.*, 984 F.2d at 1527.

F.R.Civ.P. 8(b)(1)(A) requires a party responding to a pleading to "state in short and plain terms its defenses to each claim asserted against it." An affirmative defense may be stricken as insufficient either as a matter of law or as a matter of pleading. *Kohler v. Islands*

*Restaurants, LP*, 280 F.R.D. 560, 564 (S.D. Cal. 2012). Legal insufficiency means that the affirmative defense lacks merit "under any set of facts the defendant might allege." *McArdle v. AT & T Mobility LLC*, 657 F.Supp.2d 1140, 1150 (N.D.Cal.2009), *rev'd on other grounds by* 474 Fed. Appx. 515 (2012). Pleading insufficiency means a failure to provide the plaintiff with fair notice. *Kohler*, 280 F.R.D. at 565. "Fair notice generally requires that the defendant state the nature and grounds for the affirmative defense." *Kohler*, 280 F.R.D. at 564. In all averments of fraud, including affirmative defenses, the circumstances constituting the fraud must be stated with particularity. *Multimedia Patent Trust v. Microsoft Corp.*, 525 F.Supp.2d 1200, 1210-1211 (S.D. Cal. 2007).

The defendant bears the burden of proof on an affirmative defense, in the same way that the plaintiff bears the burden of proof on a claim for relief. *See Kanne v. Conn. Gen. Life Ins. Co.*, 867 F.2d 489, 492 n. 4 (9th Cir.1988), *cert denied*, 492 U.S. 906, 109 S.Ct. 3216 (1989). "If the court determines that an affirmative defense is insufficiently pled, it may strike the defense and require the defendant to file an amended pleading that includes more specific allegations. Leave to amend will be freely granted so long as no prejudice results to the moving party." *Dodson v. Munirs Co.*, 2013 WL 3146818, at 8 (E.D. Cal. 2013).

With these standards in mind, this Court turns to the ADP parties' challenges to the dealers' unclean hands affirmative defense.

***Insufficient Pleading***

The ADP parties argue that since the uncleans hands affirmative defense "merely incorporates" the amended counterclaim's fraudulent inducement and fraudulent concealment claims, the affirmative defense must satisfy F.R.Civ.P. 9(b) particularity requirements. The ADP parties argue that the unclean hands affirmative defense fails for the same reasons as do the amended counterclaim's fraudulent inducement and fraudulent concealment claims and incorporates by reference its challenges to those claims to fault the affirmative defense.

The ADP parties continue that the uncleans hands defense must be stricken as to IP Services, which is not subject to the amended counterclaim, the basis for pleading the uncleans hand defense. The ADP parties repeat their criticism that use of "ADP" to reference jointly

ADP Commercial and ADP Dealer is unacceptable lumping of defendants.

Similar to their defense of fraudulent inducement and fraudulent concealment claims, the dealers offer little to support the unclean hands defense. The dealers offer generalities that the amended counterclaim satisfies "the particularity requirement" and so does the unclean hands affirmative defense. As to IP Services, the dealers note "to the extent that such fraudulent conduct is not alleged in the counter-claim against a particular plaintiff, the defense, on its face does not apply to that particular party."

Based on the parties' arguments, the uncleans hands defense survives or fails with the fraudulent inducement and fraudulent concealment claims. The ADP parties are correct that since IP Services is not subject to the fraudulent inducement and fraudulent concealment claims, IP Services is not subject to the uncleans hands defense which is premised on the fraudulent inducement and fraudulent concealment claims. The dealers appear to agree. Given dismissal of the fraudulent concealment claim, the unclean hands defense is premised solely on fraudulent inducement as to ADP Commercial and ADP Dealer only.

**CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1. DENIES dismissal of the amended counterclaim's (first) fraudulent inducement claim;

2. DISMISSES with prejudice the amended counterclaim's (second) fraudulent concealment claim;

3. STRIKES the answer's uncleans hands affirmative defense, except to the extent that it proceeds against ADP Commercial and ADP Dealer based on fraudulent inducement; and

4. ORDERS the ADP Commercial and ADP Dealer, no later than October 16,

/ / /

/ / /

/ / /

/ / /

2013, to file and serve a F.R.Civ.P. 7(a)(2) answer to the amended counterclaim.

IT IS SO ORDERED.

Dated:  **September 27, 2013**          **/s/ Lawrence J. O'Neill**
UNITED STATES DISTRICT JUDGE